

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-20-2008

# D.T.B. v. Dangler

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-1176

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"D.T.B. v. Dangler" (2008). *2008 Decisions.* Paper 1195.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1195

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 07-1176

_____

D.T.B., a minor child, by his next friend
DANIEL J. O'CALLAGHAN;
DANIEL J. O'CALLAGHAN, on his own behalf,
Appellants

v.

JOHN B. DANGLER, in past or present
official capacity as Justice of the Superior Court
of the State of New Jersey, Chancery Division, Family Part;
PETER C. HARVEY, in past or present official capacity as
Attorney General of the State of New Jersey;
ADAM SIFRE, ESQ.; EINHORN, HARRIS,
ASCHER, BARBARITO, FROST & IRONSON, P.C.;
SUSAN EDWARDS, PhD.

_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 05-cv-04309)
District Judge: Honorable Peter G. Sheridan

_____

Submitted Under Third Circuit LAR 34.1(a)
March 25, 2008

Before: McKEE, RENDELL and TASHIMA*, Circuit Judges

_____

* Honorable A. Wallace Tashima, Senior Judge of the United States Court of
Appeals for the Ninth Circuit, sitting by designation.

OPINION OF THE COURT

RENDELL, *Circuit Judge.*

As a result of his concern as to the progress of his continuing custody and visitation battle regarding his son, D.T.B., in New Jersey state court, and as to a suit that apparently has been filed against him in New York state court for "malicious prosecution/punitive damages," Daniel O'Callaghan, on behalf of himself and his son D.T.B., has sued the following persons and entities: (1) former New Jersey Attorney General Peter C. Harvey, in his official capacity; (2) the Hon. John B. Dangler of the New Jersey Superior Court, in his official capacity; (3) Adam Sifre, the lawyer suing O'Callaghan in New York state court; (4) the law firm of Einhorn, Harris, Ascher, Barbaritio, Frost & Ironson, P.C. ("Einhorn Harris"), which has represented D.T.B.'s mother in the custody hearings; and (5) Dr. Susan Edwards, a psychologist whom the New Jersey court appointed as an expert in the custody proceedings. The District Court granted the defendants' joint motion to dismiss with prejudice. We will affirm.

The difficult-to-follow facts, as related by O'Callaghan's convoluted complaint, are as follows:

• June 2000: O'Callaghan sued D.T.B.'s mother in New Jersey Superior Court,

before the Hon. John J. Harper, for the right to increased visitation and communication with D.T.B.

- August 2000: Based on a "fake New York psychologist's letter," Judge Harper ruled that O'Callaghan's visitation and communication rights should remain very limited. (App. 46-47.)

- August 2002: The Hon. David B. Rand, also of the New Jersey Superior Court, adopted the recommendation of a "Dr. L.," who opined that O'Callaghan should have much more time with D.T.B., that D.T.B. should not attend the boarding school to which his mother was planning on sending him, and that D.T.B. should undergo intensive counseling. The New Jersey Appellate Division then stayed the proceedings before Judge Rand on an emergency application by D.T.B.'s mother and Einhorn Harris, and ordered that D.T.B. should go to the boarding school and that his counseling sessions should end.

- October 2002: The New Jersey Appellate Division affirmed Judge Harper's August 2000 ruling regarding limited visitation.

- January 2003: Judge Rand held a conference at which he "encouraged and authorized Einhorn Harris to participate in a 'sanctions' and defamation *per se* proceeding" against O'Callaghan, made defamatory statements, and ordered a "*Gulagesque* mental health examination" of O'Callaghan. (App. 47.)

3

- July 2003: The New Jersey Appellate Division remanded the custody proceedings to the Superior Court for a plenary hearing regarding O'Callaghan's visitation rights and the boarding school issue. Judge Rand then held another conference, at which he conceded that he had no jurisdiction to hold the January 2003 conference. However, he did not conduct the plenary hearing required by the Appellate Division and instead instituted the same conditions as he did at the January 2003 conference, including the "*Gulagesque* medical exam." (App. 49.)

- August-September 2003: O'Callaghan presented the Superior Court with the results of the required medical exam. Judge Dangler, who had taken over the case from Judge Rand, then implemented Judge Rand's conditions, denied O'Callaghan's request for a hearing and refused to restart D.T.B.'s counseling.

- October 2003: At Judge Dangler's request and with the insistence and sponsorship of Sifre, Dr. Edwards intervened by submitting a report to the Superior Court that indicated, *inter alia*, that D.T.B. should continue to attend the boarding school. The report was sealed 10 days later.

- November 2003: Edwards sent the report to the New York state court hearing the "malicious prosecution/punitive damages" suit brought by Sifre against O'Callaghan. (App. 50.)

- April 2004: Judge Dangler ruled that D.T.B. could go on a school trip to Latvia, despite O'Callaghan's opposition based on his fear that terrorists in Latvia would

4

target the American schoolchildren.

- July 2004:  Judge Dangler interviewed D.T.B. privately, awarded attorney's fees against O'Callaghan, and imposed further visitation restrictions.

- November 2004:  The New Jersey Appellate Division denied motions filed by O'Callaghan for interlocutory appeal of Judge Dangler's various orders.

In August 2005, the District Court dismissed *sua sponte,* but without prejudice, a 36-page complaint filed by O'Callaghan, finding that it violated Federal Rule of Civil Procedure 8(a) because the complaint was "confusing, unnecessarily verbose, and there is no cognizable claim that can be gleaned from the pleadings." (App. 21.)

In September 2005, O'Callaghan filed the complaint in this case, which is somewhat shorter but still very similar to the complaint dismissed the previous month. His new complaint sought the following relief:  (1) declaratory judgment against Judge Dangler, declaring that Judge Dangler's conduct of the Superior Court proceedings and his promotion of the submissions of Sifre, Edwards, and Einhorn Harris to the New York court violated O'Callaghan's and D.T.B.'s constitutional rights;[1] (2) declaratory judgment against Sifre, Edwards, and Einhorn Harris, declaring that all three conspired to deny O'Callaghan and D.T.B. their constitutional rights; (3) declaratory judgment against

---

[1] The alleged constitutional violations appear to be the denial of due process, discrimination against children of unmarried parents, and discrimination against unmarried fathers.

5

Edwards, declaring that she invaded O'Callaghan's privacy; (4) compensatory damages against Edwards for defamation; and (5) injunctive relief against Sifre, Edwards, and Einhorn Harris, requiring them to cease any "wrongful, deceitful and injurious submissions" to "any person, entity, government agency, court, or otherwise" and to issue formal retractions to any who received Edwards' submissions. (App. 61-62).

The District Court dismissed all of these claims on a number of alternate grounds, including the following:

(1) As to Harvey, the Court found that the complaint necessarily failed to state a claim because he was not mentioned anywhere in the complaint.

(2) The damages claim against Edwards for defamation was held to be barred by both states' applicable statute of limitations because it was filed more than one year after her report was submitted to either the New Jersey or New York court. *See* N.J. Stat. Ann. § 2A:14-3; N.Y. C.P.L.R. § 215.

(3) Regarding all three declaratory judgment claims, the Court made the discretionary decision not to exercise jurisdiction under the Declaratory Judgment Act because "any ruling rendered by the District Court would not settle the controversy, would not serve a useful purpose in clarifying legal relations, would be used in a race for *res judicata*, would strip the Appellate Division and Supreme Court of New Jersey of their authority to review and would encroach upon the state's jurisdiction," and "appellate review at the state level afford the plaintiff an alternative and more effective remedy."

(App. 7). *See* 28 U.S.C. § 2201(a) ("In a case of actual controversy within its jurisdiction, . . . any court of the United States . . . *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." (emphasis added)).

(4)  Finally, regarding the claim for injunctive relief against Sifre, Edwards, and Einhorn Harris, the Court found that abstention was appropriate under *Younger v. Harris*, 401 U.S. 37 (1971), because there is an ongoing proceeding in New York state court, the state of New York "has an important interest in controlling and reviewing filings submitted to its courts," and the state court here "is better equipped to determine whether any such filing is 'wrongful, deceitful and injurious.'" (App. 10-11). *See Yang v. Tsui*, 416 F.3d 199, 202 (3d Cir. 2005) ("Three requirements must be met before *Younger* abstention is appropriate:  (1) there must be an ongoing state judicial proceeding to which the federal plaintiff is a party and with which the federal proceeding will interfere, (2) the state proceedings must implicate important state interests, and (3) the state proceedings must afford an adequate opportunity to raise the claims.")

We find no error in the reasoning of the District Court in its thorough opinion, as we have detailed it above.  Accordingly, we will affirm.